UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| RICK OWENS, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:16 CV 372 |
| PORTER HOSPITAL, LLC, d/b/a PORTER REGIONAL HOSPITAL, | ) |  |
| Defendant. | ) |  |

## OPINION and ORDER

I.  BACKGROUND [1]

For over two decades, plaintiff Rick Owens worked for defendant, Porter Hospital, LLC, d/b/a/ Porter Regional Hospital ("Porter Regional") as a security officer. (DE # 40-4, Def. Ans. to Interrog. at 8.) In 2013, he became a security supervisor, reporting to Jim McClanahan, the Security Director, with Jim O'Dea serving as plaintiff's supervisory peer. (DE # 43-2, Pl. Dep. 16.) While McClanahan was Director, McClanahan would issue discipline, but O'Dea and plaintiff would write schedules, oversee officers during their shifts, and handle write-ups and verbal counseling of security personnel. (DE # 43-4, O'Dea Aff. at 2.)

In the fall of 2014, Christian Goss, Director of Engineering, began supervising plaintiff and the security department. (DE # 40-4 at 8.) Goss retained the title of Director of Engineering, but the security department reported up through him after that point.

---

[1] Unless otherwise designated, the following facts are not genuinely disputed.

(DE # 43-3, Goss Dep. 33-35.) Mark Huffman, who worked under Goss as Operations Manager, assisted Goss in overseeing the security department. (Goss Dep. 32-33.)

Plaintiff asserts that, as of January 2015, most supervisory power and authority, such as the ability to decide who to write-up for tardiness or absence, had been stripped away from both plaintiff and O'Dea. (Pl. Dep. 83-84.) Plaintiff claims that employee records were removed from his office (Pl. Dep. 82:18-24), and while he still handled scheduling for a while longer (Pl. Dep. 84:10-24), by the end of January, Huffman had taken over that duty as well. (Pl. Dep. 85:1.)

Beginning in 2007, plaintiff also operated a private tree-cutting business. (Pl. Dep. 20.) On March 17, 2015, plaintiff injured his foot while doing work for his business. (Pl. Dep. 43.) He took extended medical leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, beginning the first week of April 2015, and returned to work on or about June 13, 2015. (Pl. Dep. 48.)

A few weeks before his return, plaintiff was informed that he would be working the "midnight" shift, instead of the "float" shift he had worked previously (which consisted of half-evening and half-"midnight" shifts), and other security personnel would be working "float" instead. (Pl. Dep. 55-56.) When he told Huffman the midnight shift would prevent him from working at his private business and asked why his shift had changed, Huffman shrugged his shoulders. (Pl. Dep. 57.) Plaintiff returned to work and performed the midnight shift, but this arrangement only lasted a handful of days. (Pl. Dep. 57-59.)

Defendant asserts that on June 18, 2015, it instituted a corporate restructuring, which defendant also describes as a reduction in force ("RIF"). (DE # 40-4, Def. Ans. to Interrog. at 8-10.) Goss testified that he was previously instructed by his superiors to choose the equivalent of at least five full time employees ("FTEs") for elimination in the RIF. (Goss Dep. 54, 59.) Goss utilized a rating system for the security personnel, scoring them on various attributes. (Goss Dep. 61-119.) Goss scored plaintiff, just as he had scored all of the other security employees. (Goss Dep. 82.) However, Goss testified that ultimately he chose to terminate the two supervisors, regardless of score. (Goss Dep. 104:21-25; 106:14-15; 108:10-13, 19-24.) In total, 10 security employees were eliminated in the RIF, including plaintiff and O'Dea, while 16 were retained. (Goss Dep. 75.) Plaintiff was 57 years old at the time of his termination. (Pl. Dep. 5:3.)

Goss testified that "previous to" the RIF, the company knew that it was "definitely" going to need additional staffing in the security department in the near future. (Goss Dep. 142.) Goss further testified that the company was planning to open a freestanding emergency room in Valparaiso. (Goss Dep. 142.) According to Goss, at the time of the RIF, he did not know whether Porter Regional security employees would be utilized for the Valparaiso emergency room. (Goss Dep. 142.) He also attested that at the time of the RIF, no consideration was being given to contracting with an outside security firm, though there was an awareness of the option. (Goss Dep. 143-44.)

In mid-September 2015, approximately three months after the RIF, defendant contracted with G4S, an outside security firm, for security services. (DE # 43-5 at 1.) G4S

3

employees worked at Porter Regional, as well as the Valparaiso emergency room. (Goss Dep. 159.) Defendant's contract with G4S contemplated 112 hours (or 2.8 FTEs) of coverage at Porter Regional Hospital, and 168 hours (or 4.2 FTEs) of coverage at the Valpairaso emergency room, per week. (DE # 43-5 at 6; Goss Dep. 161-62.)

Following his termination, plaintiff filed the present lawsuit. (DE # 1.) In his complaint, plaintiff asserted claims of discrimination under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (*Id.*) Plaintiff also alleged retaliation in violation of the ADA and FMLA. (*Id.*)

Defendant has moved for summary judgment on all claims. (DE # 38.) Plaintiff has responded, defending all of his claims except his ADA discrimination claim, which he has explicitly abandoned. (DE # 43 at 2.) The motion is ripe for ruling. For the reasons set forth below, the motion for summary judgment is granted, in part, and denied, in part.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of

4

law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe,* 42 F.3d at 443.

### III. DISCUSSION

Plaintiff asserts claims under the ADEA, ADA, and FMLA. Specifically, plaintiff claims that when defendant terminated him, it discriminated against him on the basis of his age in violation of the ADEA and retaliated against him for taking an extended medical leave in violation of the ADA and FMLA. With respect to his retaliation claims, plaintiff also contends that retaliation occurred when defendant moved plaintiff to a less desirable shift. (DE # 43 at 17.)

As discussed below, both parties primarily analyze this case under the indirect method first articulated in *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792 (1973). The indirect, or "burden-shifting," method allows a plaintiff to avoid summary judgment with proof that falls short of directly pointing to a discriminatory motivation if it can

survive a three-phase analysis. This method is designed to give the plaintiff a boost when he has no actual evidence of discrimination or retaliation, but just some suspicious circumstances. *Stone v. City of Indianapolis Pub. Utils. Div.,* 281 F.3d 640, 643 (7th Cir. 2002).

The indirect method has three phases. In the first phase, the plaintiff must establish a prima facie case of discrimination. *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 885 (7th Cir. 2018). Once a plaintiff establishes his prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.* If the employer does so, then the burden shifts back to the plaintiff for the third and final phase, during which the plaintiff must offer evidence suggesting that the proffered explanation is pretextual. *Id.* The court analyzes all claims under all statutes simultaneously, because the analysis is the same for each, unless otherwise noted.

### 1. Prima Facie Case

As explained above, the first step of the indirect method is that plaintiff must establish a prima facie case of discrimination or retaliation. In order to do so, a plaintiff must satisfy four elements: 1) membership in a protected class or engagement in a protected activity; 2) job performance which met the employer's legitimate expectations; 3) an adverse employment action; and 4) receipt of more favorable treatment by a similarly situated employee who was outside of the protected class or who did not engage in the protected activity. *Everroad v. Scott Truck Sys., Inc.,* 604 F.3d

471, 477 (7th Cir. 2010) (discrimination claims); *Swyear v. Fare Foods Corp.,* 911 F.3d 874, 885 (7th Cir. 2018) (retaliation claims).

Establishing a prima facie case should not be an onerous requirement. *Humphries v. CBOCS West, Inc.,* 474 F.3d 387, 405 (7th Cir. 2007). "The plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the plaintiff need present only some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion." *Id.* (quoting *Bellaver v. Quanex Corp.,* 200 F.3d 485, 493 (7th Cir. 2000)) (internal quotation marks omitted); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) ("the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic"); *Teamsters v. United States,* 431 U.S. 324, 358 (1977) (Court "did not purport to create an inflexible formulation" for a prima facie case).

The first two elements are undisputed. The parties agree that plaintiff was aged 40 years or older at the time of his termination, and was therefore a member of the class protected under the ADEA, satisfying the first element with respect to his age discrimination claim. Nor is there any dispute that he engaged in protected activity by taking extended medical leave, satisfying the first element with respect to his ADA and FMLA retaliation claims. Defendant concedes that plaintiff was meeting defendant's legitimate expectations at the time of termination (DE # 39 at 17), so the second element is not in dispute as to any claim, either.

7

As for the third element, the parties agree that plaintiff's termination satisfies the "adverse employment action" element of plaintiff's prima facie case with respect to all claims. However, he cannot rely on the fact that defendant changed his shift from float to midnight to satisfy this element. *Salisbury v. Potter,* No. 07 C 5023, 2010 WL 1286842, at *7 (N.D. Ill. Mar. 26, 2010) (change in start time by four hours was not adverse employment action); *cf. Grube v. Lau Indus., Inc.,* 257 F.3d 723, 728–29 (7th Cir. 2001) (transfer to less desirable second shift did not qualify as adverse employment action in context of constructive discharge).

Defendant disputes whether plaintiff has established the fourth element: whether a similarly situated employee outside the protected class or who did not engage in protected activity was treated more favorably. With respect to the ADEA claim, defendant points out that of the 16 retained employees, 11 were over 40 years old. (DE # 39 at 17.) However, this leaves five security employees who were outside of the protected class, who were not terminated. Similarly, with respect to the ADA and FMLA claims, defendant cannot dispute that some security personnel who did not take extended medical leave were not terminated.

Defendant argues that O'Dea is the only appropriate comparator for plaintiff, since he was the only other security "supervisor." (DE # 46 at 11.) However, the evidence taken in a light most favorable to plaintiff indicates that as of January 2015, the security "supervisor" role was largely nominal, as most of the supervisory power and authority had been stripped away from both plaintiff and O'Dea by then. (*See, e.g.,* Pl.

8

Dep. 83-84.) Further, Goss testified that he was instructed by his superiors to eliminate at least five FTEs, and that he ultimately settled on plaintiff and O'Dea, along with eight others, to meet that goal. (Goss Dep. 54, 59.) A fact-finder, taking this in a light most favorable to plaintiff, could conclude that Goss considered the entire lot of security personnel as a group when deciding who to eliminate, suggesting the employees' relative fungibility and similarity for purposes of the RIF (even if they did not serve in identical roles).

Importantly, the similarly situated inquiry is a "flexible" test, and "an employee need not show complete identity in comparing himself to the better treated employee," only "substantial similarity." *Humphries,* 474 F.3d at 405. Further, the court is cognizant that a plaintiff's evidence, at the prima facie phase, "need not be overwhelming or even destined to prevail." *Id.* Accordingly, the court concludes that the security employees who were not supervisors were substantially similar to plaintiff, such that they constitute similarly situated employees for purposes of the fourth element of a prima facie case under *McDonnell-Douglas*. It is undisputed that some of them were under 40 years old and were not included in the RIF; it is similarly undisputed that some of them did not take extended medical leave and were not included in the RIF. Accordingly, plaintiff satisfies the fourth element of his prima facie case in connection with his ADEA discrimination claim and his ADA and FMLA retaliation claims.

## 2. Legitimate, Non-Discriminatory Rationale

By establishing a prima facie case with respect to each of his claims, plaintiff has created a rebuttable presumption of discrimination and/or retaliation, which triggers the second phase of the burden-shifting analysis. *Cianci v. Pettibone Corp.,* 152 F.3d 723, 726 (7th Cir. 1998). At this point, defendant must articulate a legitimate, non-discriminatory reason for plaintiff's termination. *Id.* This is a "light burden," *Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010), which is "not difficult to satisfy." *Hague v. Thompson Distrib. Co.,* 436 F.3d 816, 826 (7th Cir. 2006). "An employer need only articulate lawful reasons for the action; that is, . . . the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (internal quotation marks omitted).

In this case, defendant stated that it fired plaintiff as part of a RIF. (DE # 40-4 at 10.) "A RIF occurs when an employer permanently eliminates certain positions from its workforce." *Michas v. Health Cost Controls of Ill., Inc.,* 209 F.3d 687, 693 (7th Cir. 2000). A RIF is a legitimate, non-discriminatory reason satisfying the second phase of the burden-shifting test. *See Scruggs v. Garst Seed Co.,* 587 F.3d 832, 838 (7th Cir. 2009). Accordingly, defendant easily satisfies its burden, and the case moves to the third phase.

### 3. Pretext

This case, like most employment discrimination cases, comes down to the third and final phase of the burden-shifting analysis: pretext. In this phase, plaintiff may avoid summary judgment if he can produce sufficient evidence suggesting that the defendant's purported reason for its employment decision is pretextual. *LaFary v. Rogers Group, Inc.,* 591 F.3d 903, 907 (7th Cir. 2010). A pretext is a "deliberate falsehood." *Ptasznik v. St. Joseph Hosp.,* 464 F.3d 691, 696 (7th Cir. 2006). A plaintiff may demonstrate pretext directly by showing that a discriminatory reason more likely motivated his termination, or indirectly by showing that the employer's explanations are unworthy of credence. *Senske v. Sybase, Inc.,* 588 F.3d 501, 507 (7th Cir. 2009).

In this case, plaintiff has attempted to show pretext indirectly by challenging the credibility of defendant's explanation. To show that an employer's explanations are not credible, a plaintiff must point to evidence that the reasons given are not the real reasons the employer acted, have no grounding in fact, or are insufficient to warrant the decision made. *Id.* The focus of the pretext inquiry is "whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Ptasznik,* 464 F.3d at 696. In the context of a RIF, evidence that an employer hired new employees to do similar work shortly after a purported RIF may establish pretext. *Summers v. Electro-Motive Diesel, Inc.,* No. 13 C 1312, 2015 WL 2385798, at *5 (N.D. Ill. May 19, 2015) (question of fact regarding pretext existed where company hired another person to do the same work a few months after plaintiff's position was eliminated in RIF); *Gorman v.*

*Andy Mohr Avon Nissan Inc.,* No. 116CV02502-SEBDLP, 2018 WL 2762556, at *5 (S.D. Ind. June 7, 2018) (plaintiff whose position was eliminated during purported decision to "restructure" department established pretext where, a few weeks after her termination, position was reinstated and filled by another person); *Mangrum v. Morrison Timing Screw Co.,* No. 03 C 3891, 2004 WL 2581091, at *9 (N.D. Ill. Aug. 3, 2004) (fact that company hired new employees in year following purported RIF was inconsistent with supposed reasons underlying RIF and helped establish question of fact preventing summary judgment); *see also Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1013 (7th Cir. 2000) (pretext can be established if employer continues hiring despite RIF).

In this case, plaintiff has pointed to evidence that before the RIF occurred, defendant knew it needed to hire additional security in the near future. A few months after the RIF occurred, it did so. Taken in a light most favorable to plaintiff, defendant's purported reason for firing plaintiff (a RIF) is called into question where defendant's own agent admitted that, before the RIF, he and the company in general anticipated additional security staffing needs in the near future (and, in fact, defendant did secure said additional staffing). The fact that the legitimacy of the rationale provided has been called into question is enough to establish pretext; further evidence of discriminatory intent is not required. *Greene v. Potter,* 557 F.3d 765, 769 (7th Cir. 2009).

Defendant insists that the additional security staffing needs were primarily at the Valparaiso emergency room (though the additional staff did work at Porter Regional), and that the additional security hired was an outside firm, not individual employees.

However, at this stage, the court must construe the facts in a light most favorable to plaintiff. *Doe,* 42 F.3d at 443. Defendant's arguments may or may not affect the ultimate decision of a fact-finder, but they do not eradicate the existence of a question of fact regarding pretext. Ultimately, the interpretation of and weight given to defendant's knowledge of its imminent need for additional security prior to the RIF and its decision to hire additional security just months after the RIF is not this court's purview. For now, the evidence creates enough suspicion about the nature of the decision given by defendant for plaintiff's termination to create an issue of fact regarding pretext. A jury should decide whether the purported rationale was genuinely believed by defendant and, ultimately, whether discrimination occurred.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (DE # 38) is **GRANTED,** in part, and **DENIED,** in part.

**SO ORDERED.**

Date: March 29, 2019

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT